Dale M. Foreman, WSBA # 6705                    The Honorable Thomas O. Rice
DANIEL J. APPEL, WSBA # 35544
FOREMAN, APPEL, HOTCHKISS &
ZIMMERMAN, PLLC
124 N. Wenatchee Ave., Suite A
P.O. Box 3125
Wenatchee, WA 98807
(509) 662-9602
dale@fahzlaw.com
daniel@fahzlaw.com

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| STEVEN LAWSON, an individual; and MICHAEL S. LERNER, an individual, | ) ) ) | Case No.  CV-15-0094-TOR |
| | ) ) ) | PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| BNSF RAILWAY COMPANY, a Delaware corporation, | ) ) ) | 10/15/2015 With Oral Argument: 1:00 p.m. |
| Defendant. | ) ) ) | |

## INTRODUCTION

Plaintiffs Steven Lawson and Michael Lerner ("Plaintiffs") filed this lawsuit against Defendant BNSF Railway Company ("BNSF") for redress of harms inflicted on them personally by BNSF. They allege, and will prove, that BNSF defrauded them personally, breached a promise made to them personally, and thwarted the sale of their

business by abruptly terminating expedited 72-hour rail service from Quincy, Washington, to Chicago, Illinois. Plaintiffs specifically allege in detail, and will prove, that BNSF promised to provide the service, and later falsely assured them that its failures to do so were temporary, whereas BNSF actually was in the process of abandoning the service in favor of more lucrative customers. They specifically allege in detail, and will prove, that BNSF knew Plaintiffs relied on its promises and representations in founding, expanding, and contracting to sell the business, called the "Cold Train," which used the 72-hour service to ship fresh produce from Washington farms to customers in the Midwest and beyond.

The injuries of which Plaintiffs complain are personal to Plaintiffs. But BNSF has recast their complaint in terms of the contract between BNSF and Rail Logistics, LC, an entity owned by Mr. Lerner through which he came to operate the Cold Train. The complaint does not allege that Rail Logistics was the seller of the Cold Train; BNSF merely assumes as much and seeks dismissal under Rule 12(b)(6). In making this assumption, BNSF improperly introduces a matter outside the pleadings.

BNSF also incorporates pleadings from a Kansas case purporting to show that Rail Logistics is in receivership. ECF No. 11 Exs. D-G. And it introduces a number of documents that it claims create a contractual relationship between itself and the supposed seller of the Cold Train, Rail Logistics. *Id*. Exs. A-C. Plaintiffs did not

FOREMAN, APPEL, HOTCHKISS &
ZIMMERMAN, PLLC
124 N. Wenatchee Ave., Suite A
P.O. Box 3125
Wenatchee, Washington 98807
(509) 662-9602  Fax (509) 662-9606

mention these documents in the complaint; they are wholly outside the pleadings.  In presenting such matters, BNSF removes this motion from the reach of Rule 12(b)(6) and places it squarely within Rule 12(d), pursuant to which the Court should treat the motion as one for summary judgment and give the parties reasonable opportunity to present their positions in that context.

Plaintiffs agree with BNSF that Rail Logistics has claims against BNSF arising from many of the same facts. But the harms caused to Rail Logistics and the Plaintiffs are distinct, and as such BNSF's motion—a catalogue of speculative defenses to hypothetical claims that Rail Logistics might bring against BNSF—is a red herring. BNSF fails to address the harm it inflicted on Plaintiffs, which Plaintiffs fully and fairly alleged in their complaint, stating plausible, valid claims for relief.  The Court should deny BNSF's motion entirely on this basis. If, however, the Court grants any portion of the motion, Plaintiffs seek leave to amend their complaint.

## BACKGROUND

Although BNSF purports to move for dismissal under Rule 12(b)(6), it largely ignores the facts alleged in Plaintiffs' complaint. Instead, BNSF recites alleged terms of the contract between itself and Rail Logistics—facts outside of the complaint—and interprets those terms favorably to its position; it then blithely substitutes Rail Logistics for Plaintiffs in its narrative.  BNSF also asserts other facts not found in the complaint,

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION TO DISMISS
PAGE 3

FOREMAN, APPEL, HOTCHKISS &
ZIMMERMAN, PLLC
124 N. Wenatchee Ave., Suite A
P.O. Box 3125
Wenatchee, Washington 98807
(509) 662-9602  Fax (509) 662-9606

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

none of which the Court should consider. *See* ECF No. 10 at 3 ("Defendant BNSF operates one of the largest freight railroad networks in the United States."); *id*. at 6 ("It was well known at the time that BNSF experienced service issues across its network due to severe weather and unusually high demand, impacting all BNSF customers, not just—as Plaintiffs suggest—the Cold Train.").

Plaintiffs refer to their complaint for the full statement of the relevant facts, repeating only the high points here. ECF No. 1. Plaintiffs, apart from Rail Logistics, individually negotiated with BNSF and received promises from the railroad regarding the 72-hour service from Quincy to Chicago. *Id*. ¶¶ 6-8. That service was not available to the public and was offered only to Plaintiffs; it was created for their use. *Id*. Plaintiffs intended to create a refrigerated rail shipping service for producers of fresh fruits that would compete with over-the-road trucking services. *Id*. Any service longer than 72 hours would cause spoilage of fresh produce and render Plaintiffs uncompetitive in this market. *Id*. BNSF knew the importance of the 72-hour schedule to Plaintiffs and their business. *Id*. ¶ 8.

The Cold Train's refrigerated rail service proved popular with customers, and the business grew rapidly. *Id*. ¶¶ 10-11. Plaintiff Michael Lerner incurred substantial personal liabilities to grow the business. *Id*. ¶ 12. In August 2013, Plaintiffs began looking for a capital partner to help expand the business, *id*. ¶ 14, eventually leading to

FOREMAN, APPEL, HOTCHKISS &
ZIMMERMAN, PLLC
124 N. Wenatchee Ave., Suite A
P.O. Box 3125
Wenatchee, Washington 98807
(509) 662-9602  Fax (509) 662-9606

an offer by Federated Railways, Inc. ("Federated") to purchase the Cold Train and continue employing Plaintiff Steve Lawson, *id*. ¶ 18. Plaintiffs told BNSF of the transaction, receiving encouragement to proceed and expand the business. *Id*. ¶¶ 17-18. BNSF continued to encourage the sale at a March 4, 2014 meeting that included Louis Ferris, the owner of Federated. *Id*. ¶ 19.

Prior to this March 4 meeting, BNSF's on-time percentage ("OTP"), which had initially been satisfactory, had fallen from 92% in August 2013 to 4% in February 2014. *Id*. ¶¶ 13, 16. Based on BNSF's repeated representations at the meeting that they were working to restore the service, Mr. Ferris infused $1,250,000 into the Cold Train immediately after the meeting. *Id*. ¶ 19. BNSF knew how important the 72-hour schedule was to Plaintiffs' business. *Id*. ¶ 20. It also knew, or should have known, that its statements regarding restoration of the service were false when it was planning to cancel the service entirely. *Id*. ¶¶ 23, 37-38.

After these repeated false representations and assurances, BNSF cancelled the 72-hour service with minimal notice to Plaintiffs, while planning and providing for other customers. *Id*. ¶ 23. BNSF did so to favor lucrative oil train traffic at the expense of growers and shippers in Washington. *Id*. ¶ 24. As a result of this change, Plaintiffs lost the sale to Federated; Mr. Lerner also faces significant personal liability. *Id*. ¶¶ 25-28.

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION TO DISMISS
PAGE 5

FOREMAN, APPEL, HOTCHKISS &
ZIMMERMAN, PLLC
124 N. Wenatchee Ave., Suite A
P.O. Box 3125
Wenatchee, Washington 98807
(509) 662-9602  Fax (509) 662-9606

# LEGAL STANDARD[1]

The Federal Rules of Civil Procedure set up a "liberal system of 'notice pleading.'" *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). When deciding a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint, which need not include specific facts, requiring only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting FRCP 8(a)(2)). In applying this standard, the court uses its experience and common sense to ensure sufficient factual allegations to give the defendant fair notice and to

---

[1] Under Washington choice of law rules, which apply given this Court's location, *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002), courts do not engage in a choice of law analysis absent an actual conflict between the laws or interests of Washington and another state, *Erwin v. Cotter Health Centers*, 167 P.3d 1112, 1120 (Wash. 2007). In the absence of a conflict, the court applies local law. *Id*. BNSF admits that no material difference separates applicable Texas and Washington law, ECF No. 10 at 9 n.5, so Washington substantive law applies, notwithstanding BNSF's misguided position that the contract between itself and Rail Logistics and its Texas choice of law provision govern this tort action.

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION TO DISMISS
PAGE 6

FOREMAN, APPEL, HOTCHKISS &
ZIMMERMAN, PLLC
124 N. Wenatchee Ave., Suite A
P.O. Box 3125
Wenatchee, Washington 98807
(509) 662-9602  Fax (509) 662-9606

suggest a plausible entitlement to relief. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). That is, the facts must allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. As the Court well knows, when ruling upon a Rule 12(b)(6) motion to dismiss, all reasonable inferences are to be drawn in favor of the non-moving party. *See, e.g.*, *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

If the Court considers evidence outside the pleadings when ruling on a Rule 12(b)(6) motion—such as the extensive evidence submitted by BNSF in this matter—it must treat it as a Rule 56 motion for summary judgment and give the nonmoving party an opportunity to respond. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) (citing Fed. R. Civ. P. 12(d)). In such a case, BNSF would be held to the summary judgment standard and must prove the absence of a genuine issue of material fact. *See* Fed. R. Civ. P. 56.

## ARGUMENT

### I.  By Presenting Matters Outside the Pleadings, BNSF Has Converted this Motion to Dismiss to a Motion for Summary Judgment.

Rule 12(d) requires that any motion to dismiss under Rule 12(b)(6) that presents "matters outside the pleadings" be treated as a motion for summary judgment, with all parties being afforded a reasonable opportunity to present all the material pertinent to

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION TO DISMISS
PAGE 7

FOREMAN, APPEL, HOTCHKISS &
ZIMMERMAN, PLLC
124 N. Wenatchee Ave., Suite A
P.O. Box 3125
Wenatchee, Washington 98807
(509) 662-9602  Fax (509) 662-9606

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

the motion.  BNSF has presented a number of critical matters outside the pleadings, which necessarily has converted this motion to a motion for summary judgment.

To be properly considered as part of a Rule 12(b)(6) motion to dismiss, external documents must be necessarily relied upon by the complaint, and their authenticity must be unquestioned; that is, there must be no "factual dispute as to their contents" or their relevance. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). The moving party cannot seek to incorporate an extraneous document's content if the complaint merely mentions it. *Eisenberg*, 593 F.3d at 1038; *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (stating that a complaint must *extensively refer* to a document before its contents can be incorporated).

BNSF's entire argument rests on extraneous documents. As stated above, BNSF ignores the personal injuries to the two individual Plaintiffs described in the complaint and recasts its relationship with Plaintiffs as a relationship between Rail Logistics and itself. Then, without evidence, BNSF contends that Rail Logistics was the seller of the Cold Train. ECF No. 10 at 6. This is the first, and most glaring, matter BNSF presents that is outside the pleadings. *Cf.* ECF No. 1 ¶¶ 17, 18. True or not—and Plaintiffs submit the matter is complicated and must be carefully analyzed after discovery of all relevant

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION TO DISMISS
PAGE 8

**FOREMAN, APPEL, HOTCHKISS &
ZIMMERMAN, PLLC**
124 N. Wenatchee Ave., Suite A
P.O. Box 3125
Wenatchee, Washington 98807
(509) 662-9602  Fax (509) 662-9606

evidence—the terms of the complaint govern in the context of Rule 12(b)(6), and BNSF cannot simply conjure up facts that help its position.

Next, BNSF has submitted as evidence documents claimed to be its contract with Rail Logistics, its Rules & Policies Guide, and an amendment to the contract. ECF No. 11, Ex. A-C. To justify this move, BNSF cites to the generic rule in *Sams*, stated above. But the general rule is inapplicable: Plaintiffs do not cite to these extraneous documents or extensively refer to them, nor are the documents attached to the complaint.

BNSF's last resort is to argue that Plaintiffs' claims necessarily rely upon these documents, but in doing so BNSF fails to explain how. While Plaintiffs do not deny the existence of a contract between Rail Logistics and BNSF, the railroad bears the burden to prove its relevance, and a fair reading of the complaint shows that, with respect to the dispute between *these* Plaintiffs and BNSF (as opposed to a hypothetical dispute between Rail Logistics and BNSF), the contract is background and not part of their tort claims.

Because BNSF has introduced this extraneous evidence, the Court should treat the motion as one for summary judgment under Rule 12(d), and allow Plaintiffs the opportunity to conduct discovery under Rule 56(d) into such matters as the scope of the alleged contract, BNSF's intent with regard to the terms of the alleged contract, any other amendments or terms that may have been incorporated into the alleged contract,

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION TO DISMISS
PAGE 9

FOREMAN, APPEL, HOTCHKISS &
ZIMMERMAN, PLLC
124 N. Wenatchee Ave., Suite A
P.O. Box 3125
Wenatchee, Washington 98807
(509) 662-9602  Fax (509) 662-9606

and BNSF's egregious breaches of the alleged contract, among other relevant matters, before responding. *See Richie*, 342 F.3d at 907.

## II.     Plaintiffs Have Standing to Assert Their Claims.

Without waiving their argument that BNSF has converted this motion into one for summary judgment, Plaintiffs respond to its so-called Rule 12(b)(6) motion. BNSF first argues that Plaintiffs lack standing to assert the claims in their complaint, wrongly asserting that these claims belong to Rail Logistics. While Plaintiffs agree that Rail Logistics has claims against BNSF, Plaintiffs are not bringing them. BNSF mistakenly relies on the general rule that a shareholder normally cannot assert claims which belong to its corporate entity. BNSF assumes what it would have to prove, namely, that the claims here belong to the corporate entity, Rail Logistics. Plaintiffs' claims belong to Plaintiffs.

To begin with, Plaintiff Steve Lawson is not a member of Rail Logistics, serving only as an officer of that company. ECF No. 1 ¶¶ 3-4. So the shareholder theory does not apply to him at all. That fact alone defeats BNSF's standing argument as to Steve Lawson. *See Franchise Tax Bd. of California v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990) ("[T]he [shareholder standing] rule is a longstanding equitable restriction that generally prohibits *shareholders* from initiating actions to enforce the rights of the corporation . . . .") (emphasis added).

FOREMAN, APPEL, HOTCHKISS &
ZIMMERMAN, PLLC
124 N. Wenatchee Ave., Suite A
P.O. Box 3125
Wenatchee, Washington 98807
(509) 662-9602  Fax (509) 662-9606

1    Further, Mr. Lawson has standing on the face of the complaint. In order to have

2  standing in Washington, a plaintiff must have a personal stake in the outcome and must

3  be benefited by the relief granted. *E.g.*, *Sabey v. Howard Johnson & Co.*, 5 P.3d 730,

4  735 (Wash. Ct. App. 2000). Standing under federal law requires the plaintiff to show

5  an injury to him caused by the defendant that a favorable decision by the court may

6  redress. *Barnum Timber Co. v. U.S. E.P.A.*, 633 F.3d 894, 897 (9th Cir. 2011). This

7  standard is easily met here as to Mr. Lawson.

8    The complaint very clearly alleges that Mr. Lawson stood to gain personally from

10  the sale to Federated, since his continued employment was an integral element of the

11  deal. ECF No. 1 ¶¶ 17, 18. The benefit was to him personally; Rail Logistics had no

12
13  interest in Mr. Lawson's job. BNSF thus harmed Mr. Lawson personally by

14  intentionally interfering with his business expectancy.  He has standing.

15
16    With respect to Plaintiff Michael Lerner, who is the owner of Rail Logistics,

17  BNSF's argument loses appeal when the shareholder rule and its exceptions are

18  carefully analyzed and applied to these facts. Courts describe the often overlapping

19
20  exceptions in various ways. The Washington Court of Appeals refers to them simply as

21  "exceptions where the shareholder's claim arises from something other than his

22  shareholder status." *Woods View II, LLC v. Kitsap Cnty.*, __ P.3d __, 2015 WL 3608691

23
24  at *8 (Wash. Ct. App. 2015). Some courts refer to the claims as being "incidental to the

25

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION TO DISMISS
PAGE 11

FOREMAN, APPEL, HOTCHKISS &
ZIMMERMAN, PLLC
124 N. Wenatchee Ave., Suite A
P.O. Box 3125
Wenatchee, Washington 98807
(509) 662-9602  Fax (509) 662-9606

injury caused to the corporation." *See, e.g.*, *United States v. Stonehill*, 83 F.3d 1156, 1161 (9th Cir. 1996). Other courts require that a special duty, contractual or tort, exists between the shareholder and the defendant. *See, e.g.*, *Sax v. World Wide Press, Inc.*, 809 F.2d 610, 613-14 (9th Cir. 1987); *Schaffer v. Universal Rundle Corp.*, 397 F.2d 893, 896 (5th Cir. 1968).

Regardless of how courts characterize the exceptions, they involve direct injury to the shareholder, which injury is redressable by the shareholder without adversely affecting the rights of other shareholders or the corporate entity to seek the same damages. *See Sound Infiniti, Inc. v. Snyder*, 186 P.3d 1107, 1116 (Wash. Ct. App. 2008) (allowing shareholder to bring "a separate, duplicative damages action" violated shareholder standing rule). Neither of those rights is adversely affected here. Mr. Lerner is the sole shareholder, and his rights are distinct from rights the corporate entity also might have. This is not a duplicative damages action.

Specifically addressing the first exception to the standing rule, the Ninth Circuit has stated: "A shareholder does have standing, however, when he or she has been injured directly and independently from the corporation. The same conduct may result in injury to both the corporation and the individual shareholders." *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1057 (9th Cir. 2002) (quotation marks and citation omitted); *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998) (stating that "the mere

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION TO DISMISS
PAGE 12

**FOREMAN, APPEL, HOTCHKISS &
ZIMMERMAN, PLLC**
124 N. Wenatchee Ave., Suite A
P.O. Box 3125
Wenatchee, Washington 98807
(509) 662-9602  Fax (509) 662-9606

presence of an injury to the corporation does not necessarily negate the simultaneous presence of an individual injury" because "an action may lie both derivatively and individually based on the same conduct").

Here, both Mr. Lawson and Mr. Lerner altered their positions in reliance upon promises and representations that BNSF made to them before the Cold Train was founded, and each was personally harmed by making investments and bypassing other opportunities. *Id.* ¶¶ 6-8, 12, 34-35, 39. Thus, both Plaintiffs were directly and personally injured by BNSF's conduct, in a way that this Court can redress. They both have standing. *Cf. Temp-Way Corp. v. Cont'l Bank*, 139 B.R. 299 (E.D. Pa.) *aff'd*, 981 F.2d 1248 (3d Cir. 1992) (shareholders had standing to assert fraud and negligent misrepresentation claims for injuries sustained prior to time they were stockholders); *Howell v. Fisher*, 49 N.C. App. 488, 272 S.E.2d 19 (N.C. Ct. App. 1980) (shareholders had standing to pursue negligent misrepresentation claims based on allegedly incorrect soil report where the defendant's agent personally delivered and exhibited copies of the report to shareholders in order to induce them to invest in the corporation); *Fidelis Corp. v. Litton Indus.*, Inc., 293 F. Supp. 164 (S.D.N.Y. 1968) (stockholders had standing to sue when they were individually injured after relying on fraudulent representations made directly to them by corporate buyer).

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION TO DISMISS
PAGE 13

FOREMAN, APPEL, HOTCHKISS &
ZIMMERMAN, PLLC
124 N. Wenatchee Ave., Suite A
P.O. Box 3125
Wenatchee, Washington 98807
(509) 662-9602 Fax (509) 662-9606

Further, a shareholder can bring an action when there is a special duty between the wrongdoer and the shareholder. *See, e.g.*, *Sax*, 809 F.2d 610 at 614. Without any question, BNSF owed duties to Mr. Lerner individually (and to Mr. Lawson, for that matter), including the duties to not misrepresent facts, interfere with his business expectancies, or go back on its promises. Not only did BNSF owe these tort duties to Mr. Lerner, it breached them intentionally, even fraudulently. ECF No. 1 ¶¶ 31, 34 and 38. These bad faith allegations further distinguish Mr. Lerner's injuries from the corporate entity's and validate his right to individually seek redress. *See, e.g.*, *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423 (S.D.N.Y. 2006) (shareholder had standing to assert promissory estoppel and misrepresentation claims based on personal inducement by investor to shareholder and detrimental reliance thereon when statements were made to shareholder personally); *Mullins v. First Nat'l Exchange Bank*, 275 F. Supp. 712, 722 (W.D. Va. 1967) (individual action may be maintained "where fraud, deceit or bad faith have been practiced upon [shareholder] as an individual") (quoting *Henry v. General Motors Corp.*, 236 F. Supp. 854, 856-57 (N.D.N.Y.1964) (internal quotation marks omitted)).

## II.    BNSF's Contract with Rail Logistics Does Not Bar Plaintiffs' Claims.

BNSF's next argument is closely connected with its first: if the claims belong to Rail Logistics, then the contract between the two parties govern any claims that might

FOREMAN, APPEL, HOTCHKISS &
ZIMMERMAN, PLLC
124 N. Wenatchee Ave., Suite A
P.O. Box 3125
Wenatchee, Washington 98807
(509) 662-9602  Fax (509) 662-9606

arise. Again, BNSF's conclusion is false because its premise is false. As discussed, Plaintiffs here assert personal claims to redress personal injuries. The contract between BNSF and Rail Logistics, which is not a party to this lawsuit, does not supersede these claims. BNSF's lengthy analysis of its liability under its contracts with Rail Logistics, although wrong, has no relevance to these claims.

BNSF mistakenly relies on the economic loss rule, now called the independent duty rule in Washington, to drown Plaintiffs' tort claims in contract. The independent duty rule, an analytical tool used to define the boundary between contract and tort, states that "[a]n injury . . . is remediable in tort if it traces back to the breach of a tort duty arising independently of the terms of the contract." *Elcon Const., Inc. v. E. Washington Univ.*, 273 P.3d 965, 969-70 (Wash. 2012). In *Elcon*, the court held that claims for fraud and tortious interference are not barred by this rule. Accordingly, the independent duty rule would not bar Plaintiffs' tort claims even if Plaintiffs had been parties to the contracts at issue, which they were not.

Further, BNSF mistakenly suggests that if it did not breach an agreement, it could not be liable for any related tort. But the Washington Supreme Court squarely rejected that position long ago: "The existence of a valid enforceable contract is not necessary to the maintenance of the action [for tortious interference] and the possibility of a remedy in contract does not preclude it." *Cherberg v. Peoples Nat. Bank of Wash.*, 564

**FOREMAN, APPEL, HOTCHKISS &
ZIMMERMAN, PLLC**
124 N. Wenatchee Ave., Suite A
P.O. Box 3125
Wenatchee, Washington 98807
(509) 662-9602  Fax (509) 662-9606

P.2d 1137, 1142 (Wash. 1977); *see also Kazia Digo, Inc. v. Smart Circle Int'l, LLC*, 2012 WL 836233, at \*5 (W.D. Wash. Mar. 12, 2012) (holding that the economic loss rule/independent duty doctrine did not preclude a claim for tortious interference). BNSF's arguments based on the contract between it and Rail Logistics find no support in Washington law and do not justify a motion to dismiss.

### III. Plaintiffs' Claims Are Supported by Allegations of Fact and Law.

Following its general arguments on standing and the contracts, BNSF briefly turns to each claim actually made in this case and asserts that Plaintiffs have failed to state a claim. As before, BNSF is mistaken.

#### A. BNSF Intentionally Interfered with Plaintiffs' Contract with Federated Railways, Inc.

BNSF levels two charges against Plaintiffs' intentional interference claim, together with a supposed factual inconsistency. Taking the last point first, BNSF pretends to see some sort of contradiction between Plaintiffs' allegations that BNSF interfered with their expectancy of the sale to Federated, *e.g.*, ECF No. 1 ¶¶ 17-26, and their allegations that BNSF's on-time percentage ("OTP") had already suffered before then, *id*. ¶¶ 15-16. Apparently, BSNF believes that its abysmal service record absolves it of responsibility for later terminating the service entirely. As the complaint makes clear, Plaintiffs were attempting to raise additional capital before the OTP problems

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION TO DISMISS
PAGE 16

**FOREMAN, APPEL, HOTCHKISS &**
**ZIMMERMAN, PLLC**
124 N. Wenatchee Ave., Suite A
P.O. Box 3125
Wenatchee, Washington 98807
(509) 662-9602  Fax (509) 662-9606

began. *Id.* ¶ 14. And BNSF representatives assured Plaintiffs the problems were being addressed and service would be restored, which encouraged them to invest further and to arrange for a sale. *E.g., id.* ¶¶ 15, 16, 20. But instead of restoring the service, BNSF cancelled it, thwarting the sale. *Id.* ¶¶ 23-26. BNSF injured Plaintiffs by both making false representations and preventing the sale, and it is liable for both harms. No factual inconsistency exists in this narrative of wrongdoing.

BNSF's legal arguments on this point fare no better. First, BNSF complains that Plaintiffs have not alleged that BNSF intended to interfere with Plaintiffs' sale to Federated. But it is axiomatic that in tort law:

> Intent . . . is broader than a desire to bring about physical results. It must extend not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what he does. . . . The man who fires a bullet into a dense crowd may fervently pray that he will hit no one, but since he must believe and know that he cannot avoid doing so, he intends it. The practical application of this principle has meant that where a reasonable man in the defendant's position would believe that a particular result was substantially certain to follow, he will be dealt with by the jury, or even by the court, as though he had intended it.

W. Prosser, *Torts* § 8, at 31–32 (4th ed. 1971). Thus: "Interference with a business expectancy is intentional 'if the actor desires to bring it about *or* if he knows that the interference is certain or substantially certain to occur as a result of his action." *Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc.*, 52 P.3d 30, 34 (Wash. Ct.

FOREMAN, APPEL, HOTCHKISS &
ZIMMERMAN, PLLC
124 N. Wenatchee Ave., Suite A
P.O. Box 3125
Wenatchee, Washington 98807
(509) 662-9602  Fax (509) 662-9606

App. 2002), *as corrected* (Sept. 23, 2002) (quoting Restatement (Second) of Torts § 766B, cmt. d.) (emphasis added) (interference was intentional because defendant expected the result, whether or not he wanted it); *Pleas v. City of Seattle*, 774 P.2d 1158, 1164 (Wash. 1989) (desire to interfere need not be defendant's primary motive). *Cf. Multnomah Legal Services Workers Union v. Legal Services Corp.*, 936 F.2d 1547, 1553 (9th Cir. 1991) (intent found where defendant knew interference was substantially certain to occur as a result of its conduct, and was a necessary consequence of that conduct) (applying Oregon law).

Plaintiffs alleged sufficient facts to show intent. Plaintiffs alleged that BNSF knew how important the 72-hour service from Quincy to Chicago was for the Cold Train's operations, Plaintiffs having made that point to BNSF on multiple occasions. ECF No. 1 ¶ 25. Given this knowledge, BNSF's decision to terminate the 72-hour service necessarily rose to the level of an intentional act because it was substantially certain that cancelling the service would scuttle the sale to Federated by destroying the Plaintiffs' business. *See id.* ¶¶ 23, 29-31.

Next, BNSF argues that Plaintiffs have not and cannot allege an improper means or purpose for its interference, stating that its decision to cancel the 72-hour service for "business reasons" was by definition not improper. But even interference for an "understandable reason, such as financial difficulty" does not automatically absolve one

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION TO DISMISS
PAGE 18

**FOREMAN, APPEL, HOTCHKISS &
ZIMMERMAN, PLLC**
124 N. Wenatchee Ave., Suite A
P.O. Box 3125
Wenatchee, Washington 98807
(509) 662-9602  Fax (509) 662-9606

from liability for tortious interference. *DeVoto v. Pacific Fidelity Life Ins. Co.*, 618 F.2d 1340, 1349 (9th Cir. 1980). And Plaintiffs have alleged that BNSF did so motivated by greed, a motive recognized as improper for purposes of this tort. *See, e.g.*, *Elcon Const., Inc.*, 273 P.3d at 971 (listing greed as an improper purpose); *Moore*, 278 P.3d at 200 (noting that an otherwise proper action can be motivated by an improper purpose such as greed); *Cherberg*, 564 P.2d at 1144 (reinstating an award for tortious interference when evidence showed that defendant acted improperly by breaching a contract with the hope of securing better profits elsewhere). Plaintiffs have alleged facts consistent with this improper purpose, such as BNSF's planning the cancellation of the 72-hour service for months in advance and preparing other customers for the cancellation, but concealing the coming change from Plaintiffs, who only received minimal notice, all for the purpose of preferring oil train traffic that padded BNSF's pockets. ECF No. 1 ¶¶ 23-24. Furthermore, BNSF's false representations and concealment of its intent while Plaintiffs dug themselves deeper into the prospective sale is fraud, or at a minimum negligent misrepresentation, which is also an improper means of interference. Restatement (Second) of Torts § 767 (1979), cmt. c; *cf. Libera v. City of Port Angeles*, 316 P.3d 1064, 1068 (Wash. Ct. App. 2013) (court need not find that defendant acted with ill will, spite, defamation, fraud, force, or coercion in order to find improper purpose or means).

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION TO DISMISS
PAGE 19

FOREMAN, APPEL, HOTCHKISS &
ZIMMERMAN, PLLC
124 N. Wenatchee Ave., Suite A
P.O. Box 3125
Wenatchee, Washington 98807
(509) 662-9602  Fax (509) 662-9606

BNSF glibly asserts that it acted for its own "business reasons" and cannot be faulted. But merely stating the fact does not make it so. Rather, BNSF must come forward with *evidence* of its good faith and lack of greed, which, if it exists, might raise an issue of fact for trial, but which has no possible bearing on this motion to dismiss. Plaintiffs have properly stated a claim for tortious interference and should be allowed to proceed with discovery.

**B.    Rail Logistics' Contract with BNSF Does Not Bar Plaintiffs' Claim for Promissory Estoppel.**

Once again, BNSF attempts a sleight of hand by attributing Rail Logistics' contract with BNSF to Plaintiffs, going so far as to call it "Plaintiffs' Contract." ECF No. 10 at 16. But Plaintiffs are not parties to that contract, and this fact alone defeats BNSF's argument. The cases to which BNSF cites all confirm this point: "if a valid contract *between the parties* covers the alleged promise, promissory estoppel is not applicable to that promise. Instead, the wronged party must seek damages under the contract." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 654 F. Supp. 2d 536, 544 (N.D. Tex. 2009) (quotation marks omitted); *see also Westcott v. Wells Fargo Bank, N.A.*, 862 F. Supp. 2d 1111, 1117 (W.D. Wash. 2012) (dismissing a promissory estoppel claim because it "was covered by the terms of *the contract between the parties*"); *Bardy v. Cardiac Sci. Corp.*, 2013 WL 5588313, at *7 (W.D. Wash. Oct. 10, 2013) (same).

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION TO DISMISS
PAGE 20

FOREMAN, APPEL, HOTCHKISS &
ZIMMERMAN, PLLC
124 N. Wenatchee Ave., Suite A
P.O. Box 3125
Wenatchee, Washington 98807
(509) 662-9602  Fax (509) 662-9606

Further, Plaintiffs allege promises of BNSF that predate the contract and were made directly to Plaintiffs without reference to Rail Logistics. ECF No. 1 ¶¶ 6-8, 34. On the basis of these promises, Plaintiffs incurred liability, refrained from pursuing other opportunities, and spent significant amounts of time and effort developing and implementing their business plan. Plaintiffs' losses are separate and distinct from losses suffered by Rail Logistics as a result of BNSF's breaches of its contract. Plaintiffs relied on these antecedent promises before Rail Logistics and BNSF ever had a contract. Rail Logistics may well have claims arising under the contract, but those claims do not bar Plaintiffs' estoppel claim as alleged in the complaint. *Cf. Temp-Way Corp.*, 139 B.R. at 299; *Howell*, 49 N.C. App. at 488; *Fidelis Corp.*, 293 F. Supp. at 164.

Finally, BNSF avers that Plaintiffs' allegations are insufficiently detailed, curiously citing *Hunter v. Ferebauer*, 980 F. Supp. 2d 1251, 1261 (E.D. Wash. 2013), a case that did not involve promissory estoppel. BNSF quotes reasoning about a conspiracy claim, which has no bearing here. *Id*. At any rate, Rule 8 does not require a long narrative of facts, it requires only a short and plain statement. *Erickson*, 551 U.S. at 93-94. Plaintiffs' allegations meet this standard. If BNSF wants additional details, it can ask for them in discovery. What matters now is that the company has notice of the claim against it.

FOREMAN, APPEL, HOTCHKISS &
ZIMMERMAN, PLLC
124 N. Wenatchee Ave., Suite A
P.O. Box 3125
Wenatchee, Washington 98807
(509) 662-9602  Fax (509) 662-9606

1

2

### C.    Plaintiffs Adequately State Claims for Fraud and Negligent Misrepresentation.

3

4    BNSF advances two arguments against Plaintiffs' misrepresentation claims.

5    First, it states the claims lack sufficient factual allegations. Second, it asserts that

6    Plaintiffs fail to allege BNSF's statements were false. Neither argument has merit.

7    To state a claim for fraud, Plaintiffs need to allege that BNSF misrepresented a

8    material fact, knowing it was false and intending Plaintiffs to rely upon that fact, and

9    that they did rely upon it to their harm. *E.g., Kirkham v. Smith*, 23 P.3d 10, 13 (Wash.

10    Ct. App. 2001). The elements of negligent misrepresentation are similar, substituting

11    negligence for intent: Plaintiffs must allege that BNSF was negligent in obtaining or

12    communicating the false information. *E.g., Ross v. Kirner*, 172 P.3d 701, 704 (Wash.

13    2007).

14    BNSF argues that Plaintiffs have not alleged the "who, what, when, where, and

15    how" supposedly required to state a claim for misrepresentation. ECF No. 10 at 19. But

16

17

18    Plaintiffs have done so. The "who" are BNSF representatives who regularly

19    communicated and met with Plaintiffs. ECF No. 1 ¶¶ 15-16, 37. The "what" are BNSF's

20    misrepresentations that they were working to restore the service to its previous level,

21    and its clear implication that BNSF presently intended to restore and continue service.

22    *Id.* ¶¶ 37-38. The "when" was from September 2013 through March 2014, including but

23

24

25

**FOREMAN, APPEL, HOTCHKISS &
ZIMMERMAN, PLLC**
124 N. Wenatchee Ave., Suite A
P.O. Box 3125
Wenatchee, Washington 98807
(509) 662-9602  Fax (509) 662-9606

not limited to the meetings when BNSF encouraged Plaintiffs to proceed on the belief that service would be restored and continued. *Id*. The "where" was in communications between BNSF representatives and Plaintiffs, both written and oral, and at their meetings. *Id*. The "how" is that BNSF stated it was working to restore the service when it was instead planning to terminate it. *Id*. Plaintiffs relied upon these misrepresentations of existing facts, and are entitled to recover their losses. *Id*. ¶ 39.

Next, BNSF asserts that Plaintiffs have not claimed any statement of existing fact to be false. But Plaintiffs have alleged that BNSF's statements regarding efforts to restore the service to previous levels were false, as evidenced by BNSF's decision to cancel the service. *Id*. ¶ 38. Cancelling the service is simply not consistent with statements that BNSF was actively trying to restore the service. BNSF's statements were of existing fact, and false, and the BNSF representatives knew or should have known of their falsity. Plaintiffs have alleged plausible claims for fraud and negligent misrepresentation.

**D.     If the Court Grants Any Part of BNSF's Motion, Plaintiffs Should Be Allowed to Amend Their Complaint.**

Under Rule 15(a), leave to amend should be freely granted. Fed. R. Civ. P. 15(a)(2). If a court grants a motion to dismiss under either Rule 12(b)(6) or Rule 9(b), the court should grant leave to amend. *E.g., Bly-Magee v. California*, 236 F.3d 1014,

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION TO DISMISS
PAGE 23

FOREMAN, APPEL, HOTCHKISS &
ZIMMERMAN, PLLC
124 N. Wenatchee Ave., Suite A
P.O. Box 3125
Wenatchee, Washington 98807
(509) 662-9602  Fax (509) 662-9606

1019 (9th Cir. 2001) ("We consistently have held that leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." (quotation marks omitted)); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000); *United Union of Roofers, Waterproofers, & Allied Trades No. 40 v. Ins. Corp. of Am.*, 919 F.2d 1398, 1402 (9th Cir. 1990). If the Court grants any part of BNSF's motion, Plaintiffs request leave to amend their complaint to address the Court's concerns.

## CONCLUSION

For the foregoing reasons, BNSF's motion should be denied in its entirety. If the Court does grant it or any part thereof, Plaintiffs seek leave to amend their complaint.

**DATED** this 13th day of July, 2015.

FOREMAN, APPEL, HOTCHKISS & ZIMMERMAN, PLLC

By: /s/ Dale M. Foreman
    Dale M. Foreman, WSBA #6507
    Daniel J. Appel, WSBA #35544
    P. O. Box 3125
    Wenatchee, WA  98807
    (509) 662-9602 - (509) 662-9606 fax
    E-mail: dale@fahzlaw.com
    E-mail: daniel@fahzlaw.com
    Attorneys for Plaintiffs

PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION TO DISMISS
PAGE 24

FOREMAN, APPEL, HOTCHKISS &
ZIMMERMAN, PLLC
124 N. Wenatchee Ave., Suite A
P.O. Box 3125
Wenatchee, Washington 98807
(509) 662-9602  Fax (509) 662-9606

CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of July, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

Counsel for Defendant BNSF Railway Co.:

James B. King: jking@ecl-law.com
Markus W. Louvier: mlouvier@ecl-law.com
Daniel T. Donovan: daniel.donovan@kirkland.com
Bridget K. O'Connor: bridget.oconnor@kirkland.com

          FOREMAN, APPEL, HOTCHKISS & ZIMMERMAN, PLLC

          By: /s/ Daniel J. Appel
             Dale M. Foreman, WSBA #6507
             Daniel J. Appel, WSBA #35544
             P. O. Box 3125
             Wenatchee, WA 98807
             (509) 662-9602 - (509) 662-9606 fax
             E-mail: dale@fahzlaw.com
             E-mail: daniel@fahzlaw.com
             Attorneys for Plaintiffs

FOREMAN, APPEL, HOTCHKISS &
ZIMMERMAN, PLLC
124 N. Wenatchee Ave., Suite A
P.O. Box 3125
Wenatchee, Washington 98807
(509) 662-9602  Fax (509) 662-9606