1

2

3

4

5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| 7 STEVEN LAWSON, an individual; and MICHAEL S. LERNER, an individual, | NO:  2:15-CV-0094-TOR |
| 8 | ORDER ON DEFENDANT'S MOTION TO DISMISS |
| 9 Plaintiffs, | |
| 10 v. | |
| 11 BNSF RAILWAY COMPANY, a Delaware corporation, | |
| 12 Defendant. | |

13    BEFORE THE COURT is Defendant BNSF Railway Company's motion to

14  dismiss for failure to state a claim (ECF No. 10).  The motion was heard with oral

15  argument on October 15, 2015.  Daniel J. Appel and Dale M. Foreman appeared on

16  behalf of Plaintiffs Steven Lawson and Michael S. Lerner.  James B. King, Bridget

17  K. O'Connor, and Daniel T. Donovan appeared on behalf of Defendant BNSF

18  Railway Company ("BNSF").

19        The Court has reviewed the motion and the file therein and heard from

20  counsel.  Being fully informed, the Court grants Defendant's motion.


ORDER ON DEFENDANT'S MOTION TO DISMISS ~ 1

**BACKGROUND**

On April 7, 2015, Plaintiffs filed a Complaint (ECF No. 1) seeking damages under the following causes of action: (1) intentional interference with business expectancy; (2) promissory estoppel; and (3) fraud/negligent misrepresentation. BNSF filed a motion to dismiss all claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 10.

**FACTS**

The following facts are drawn from Plaintiffs' complaint, as well as the matter of judicial notice and materials incorporated by reference and attached for this Court's review by Defendant[1], and are accepted as true for the purposes of the instant motion.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

---

[1] Generally a court may not consider material beyond the pleadings on a 12(b)(6) motion without converting the motion to dismiss to a motion for summary judgment, however, a court may consider materials including documents attached to the complaint, documents incorporated by reference in the complaint and matters of judicial notice without converting the motion.  *See United States v. Ritchie*, 342 F.3d 903, 907-908 (9th Cir. 2003).

ORDER ON DEFENDANT'S MOTION TO DISMISS ~ 2

1    Rail Logistics, LC ("Rail Logistics")[2] operated the "Cold Train," an

2    intermodal shipping service for fresh and frozen food items, from 2010 until 2014.

3    ECF No. 1 at ¶¶ 3; 9-10, 27-28.  Plaintiff Steven Lawson was the president and

4    chief executive officer of Rail Logistics.  *Id.* at ¶ 3.  Plaintiff Michael S. Lerner is

5    the owner and managing member of Rail Logistics.  *Id.* at ¶ 4.

6    Cold Train was developed in 2009 when Plaintiffs began discussions with

7    BNSF "to begin a refrigerated intermodal shipping service the primary focus of

8    which was to ship fresh produce grown in North Central Washington State to

9    retailers in the Midwest."  *Id.* at ¶ 6.  Plaintiffs allege BNSF notified them of a

10   "special service for expedited container movement with a 72-hour eastbound

11   transit time" between Cold Train's terminal in Quincy, Washington and BNSF's

12   terminal in Chicago, Illinois.  *Id.* at ¶ 7.  Plaintiffs further allege this expedited

13   service was not publicly available and that BNSF knew that Cold Train's success

14   depended upon this expedited service.  *Id.*  Plaintiffs claim they relied on the 72-

15   hour service schedule "promised by BNSF" and developed a business plan

16   accordingly.  *Id.* at ¶ 8.

17

18

19   [2] At oral argument, Counsel informed the Court that Rail Logistics is a Limited

20   Company, a limited liability company formed under Kansas law.

ORDER ON DEFENDANT'S MOTION TO DISMISS ~ 3

In March 2009, Rail Logistics entered into a contract with BNSF to operate Cold Train on BNSF's rail network. *See* ECF No. 13. The contract was signed by Michael S. Lerner in a representative capacity as the Managing Member of Rail Logistics. *Id.* at 3. Pursuant to the contract, Rail Logistics began operating Cold Train on BNSF's network in 2010. *See* ECF Nos. 1 at ¶ 9; 13 at ¶ 1.

In 2011, Cold Train shipped approximately 300 containers a month, rising to 500 per month in 2012, and to almost 700 per month in 2013. ECF No. 1 at ¶ 10. By September 2013, Cold Train had acquired over 400 containers and delivered cargo from Quincy, Washington and Portland, Oregon to terminals in nineteen different states. *Id.* at ¶ 11. Plaintiffs claim "BNSF knew that the Cold Train was acquiring these assets to grow its business and encouraged it to do so." *Id.* Plaintiffs also claim that BNSF was aware that Mr. Lerner incurred personal liability to acquire Cold Train assets and "turned down other business opportunities to focus on building the Cold Train business." *Id.* at ¶ 12.

In August 2013, Plaintiffs sought out a capital partner to provide needed funds to expand Cold Train's business. *Id.* at ¶ 14. Plaintiffs allege, starting in September of 2013, that the 72-hour delivery on-time percentage ("OTP") from Quincy to Chicago began to steadily decline, falling to 81% in September, 54% in October, 44% in November, 35% in December, 28% in January 2014, and 4% in February 2014. *Id.* at ¶¶ 15-16. Plaintiffs allege BNSF assured them in September

ORDER ON DEFENDANT'S MOTION TO DISMISS ~ 4

and October of 2013 that the OTP issues would be addressed and resolved. *Id.*

Plaintiffs claim that "[b]ased on these assurances, the Cold Train continued to

invest additional money into its business and to add new customers." *Id.* at ¶ 15.

In January 2014, Plaintiff Steve Lawson travelled to Fort Worth, Texas to

inform BNSF of an offer Plaintiffs received to sell Cold Train to Federated

Railways, Inc. ("Federated"). *Id.* at ¶ 17. Plaintiffs allege "BNSF responded

enthusiastically," and based on this encouragement Plaintiffs formalized the deal

with Federated by signing a letter of intent on January 20, 2014. *Id.* at ¶¶ 17-18.

Plaintiffs claim the sale was worth "approximately $31.7 million in cash, debt

assumption and lease acquisitions." *Id.* at ¶ 18. The sale also provided a five-year

employment contract for Mr. Lawson. *Id.*

In March 2014, Mr. Lawson and a representative of Federated met with

BNSF to "to discuss the Cold Train's business and its future with BNSF." *Id.* at

¶ 19. Plaintiffs allege BNSF encouraged the sale to proceed, and based "solely on

this meeting" Federated infused capital of $1.25 million into Cold Train. *Id.*

In April 2014, Plaintiffs allege BNSF's OTP dropped to 3%. *Id.* at ¶ 20.

Mr. Lawson claims to have repeatedly complained to BNSF that the declining OTP

was detrimental to Cold Train's business. *Id.* Plaintiffs allege that the low OTP

caused Cold Train to "lose most of its business as its customers refused to tolerate

the delays." *Id.* at ¶ 21.

ORDER ON DEFENDANT'S MOTION TO DISMISS ~ 5

On April 24, 2014, BNSF informed Plaintiffs that the 72-hour service would be cancelled the following day and substituted for a new 125-hour service. *Id.* at ¶ 23. Plaintiffs allege BNSF planned to make this change for several months and prepared other major customers for the change but "purposefully concealed" this plan from Cold Train. *Id.* Plaintiffs further allege the change was motived by BNSF's decision to commit all of its resources to more profitable oil and coal shipments. *Id.* at ¶ 24. Plaintiffs requested that BNSF restore the service, and informed BNSF that the 72-hour service and high OTP were "vital to the Cold Train's economic viability." *Id.* at ¶ 25. BNSF declined to restore the service. *Id.*

Plaintiffs allege that "[a]s a direct result of the service change," Federated withdrew its offer to purchase the Cold Train." *Id.* at ¶ 26. Plaintiffs allege to have lost the value of their Cold Train business and now face significant liabilities. *Id.* at ¶ 28.

## STANDARD OF REVIEW

Defendant attaches a number of documents to its Declaration in support of the instant motion. ECF No. 11. These documents include (1) the contract between Rail Logistics and BNSF (ECF Nos. 11-2; 13;14)[3] and (2) copies of

---

[3] BNSF attached the contract (ECF No. 13), an amendment to the contract (ECF No. 14), and BNSF Intermodal Rules and Policies Guide (ECF No. 11-2), which is

ORDER ON DEFENDANT'S MOTION TO DISMISS ~ 6

pleadings from a case in the District Court of Johnson County, Kansas showing

Rail Logistics is in receivership (ECF Nos. 11-4; 11-5; 11-6; 11-7).  Plaintiffs

argue that the materials are improperly before the Court and therefore the

Defendant's motion to dismiss should be converted into a motion for summary

judgment, ECF No. 23 at 2-3, for which they seek additional time to respond after

discovery.

On a motion to dismiss, the Court may consider materials incorporated into

the complaint or matters of public record.  *See Coto Settlement v. Eisenberg*, 593

F.3d 1031, 1038 (9th Cir. 2010).  Materials incorporated into the complaint

includes "situations where the complaint necessarily relies upon a document or the

contents of the document are alleged in a complaint."  *Id*.  A court may consider

such a document if its authenticity is not questioned.  *See Marder v. Lopez,* 450

F.3d 445, 448 (9th Cir. 2006).

Here, the Complaint does not explicitly refer to the contract between Rail

Logistics and BNSF.  However, the Complaint contains allegations relative to the

business agreement the parties contracted to perform.  Moreover, as Defendant

points out, the Complaint refers to certain provisions of the contract.  *See* ECF No.

---

incorporated by reference into the contract.  Hereinafter, the Court refers to these

documents collectively as the "contract."

ORDER ON DEFENDANT'S MOTION TO DISMISS ~ 7

1 at ¶ 10 (alleging BNSF "required the Cold Train to acquire" and ship a minimum number of containers).  Plaintiffs do not contend that the contract provided in the record is not authentic.  *See* ECF No. 23 at 3; 9; 15.  Additionally, the document showing Rail Logistics is in receivership is a matter of public record.  *See Coto Settlement*, 593 F.3d at 1038.  Accordingly, the Court will consider the contract incorporated by reference and attached for review by Defendant, take judicial notice of the Kansas state court pleadings, and treat Defendant's motion as one for dismissal.

### 1.  Legal Standard

A motion to dismiss for failure to state a claim tests the legal sufficiency of the plaintiff's claims.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  To withstand dismissal, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Naked assertion[s]," "labels and conclusions," or "formulaic recitation[s] of the elements of a cause of action will not do."  *Id.* at 555, 557.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While a plaintiff need not establish a probability of success on the merits, he or she must demonstrate "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

ORDER ON DEFENDANT'S MOTION TO DISMISS ~ 8

A complaint must also contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require detailed factual allegations, but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In assessing whether Rule 8(a)(2) has been satisfied, a court must first identify the elements of the plaintiff's claim(s) and then determine whether those elements could be proven on the facts pled. The court should generally draw all reasonable inferences in the plaintiff's favor, *see Sheppard v. David Evans and Assocs.*, 694 F.3d 1045, 1051 (9th Cir. 2012), but it need not accept "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted).

Federal Rule of Civil Procedure 9(b) governs the pleading of allegations involving fraud or mistake. In contrast to the more lenient standard set forth in Rule 8(a)(2), Rule (9)(b) requires that a party "state with particularity the circumstances constituting fraud or mistake" in his or her complaint. To satisfy this standard, the allegations of fraud must "be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation and citation omitted). Thus, "[a]verments of fraud must be accompanied by the who, what, when, where, and

ORDER ON DEFENDANT'S MOTION TO DISMISS ~ 9

1    how of the misconduct charged." *Id.* (quotation and citation omitted).  A party

2    may, however, plead allegations of "[m]alice, intent, knowledge, and other

3    conditions of a person's mind" more generally. Fed. R. Civ. P. 9(b).

4        In ruling upon a motion to dismiss, a court must accept all factual allegations

5    in the complaint as true and construe the pleadings in the light most favorable to

6    the party opposing the motion.  *Sprewell v. Golden State Warriors*, 266 F.3d 979,

7    988 (9th Cir. 2001).  The court may disregard allegations that are contradicted by

8    matters properly subject to judicial notice or by exhibit.  *Id.*  The court may also

9    disregard conclusory allegations and arguments which are not supported by

10   reasonable deductions and inferences.  *Id.*

11       The Ninth Circuit has repeatedly instructed district courts to "grant leave to

12   amend even if no request to amend the pleading was made, unless . . . the pleading

13   could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203

14   F.3d 1122, 1130 (9th Cir. 2000).  The standard for granting leave to amend is

15   generous—the court "should freely give leave when justice so requires."  Fed. R.

16   Civ. P. 15(a)(2).  In determining whether leave to amend is appropriate, a court

17   must consider the following five factors: bad faith, undue delay, prejudice to the

18   opposing party, futility of amendment, and whether the plaintiff has previously

19   amended the complaint.  *United States v. Corinthian Colleges*, 655 F.3d 984, 995

20   (9th Cir. 2011).

ORDER ON DEFENDANT'S MOTION TO DISMISS ~ 10

**DISCUSSION**

Defendant argues Plaintiffs' claims should be dismissed because (1) Plaintiffs lack standing, (2) Rail Logistics contract with BNSF preclude the claims asserted in this action, and (3) the claims should be dismissed as a matter of law. The Court will address each argument in turn.

### 1. Standing

As a preliminary matter, Defendant argues Plaintiffs lack standing to assert claims that belong to Rail Logistics.[4]  *See* ECF No. 10 at 8-11.  Defendant argues Plaintiffs only allege BNSF made promises relative to Rail Logistics' Cold Train business, not independent promises to Plaintiffs.  *Id.* at 10.  Defendant also argues that Plaintiffs only allege injury to Cold Train's business, not to themselves as individuals.  *Id.*  In support of its argument, Defendant cites cases discussing the rule that shareholders do not have standing to sue for injuries done to a corporation.  *See id.* at 8-9.

---

[4] In support of its standing argument, Defendant contends that Rail Logistics entered into receivership proceedings in which the presiding court ordered that no person other than the appointed Receiver is authorized to seek relief for the company.   ECF No. 10 at 8 n.4 (citing ECF No. 11-5 at ¶¶ 5, 18).

ORDER ON DEFENDANT'S MOTION TO DISMISS ~ 11

The Court agrees with defendant.  Standing consists of two related components: the constitutional requirements of Article III and nonconstitutional prudential considerations.  *See Franchise Tax Bd. Of California v. Alcan Aluminium Ltd.*, 493 U.S. 331, 335 (1990).  Art. III requires a plaintiff to allege: (1) "that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant;" (2) "that the injury fairly can be traced to the challenged action;" and (3) that the injury "is likely to be redressed by a favorable decision."  *Id.* (internal quotations and citations omitted).  Among the prudential considerations related to standing is the Ninth Circuit's "shareholder standing rule."  *See id.* at 336 (rule recognized and left intact).  That rule provides that "[g]enerally, a shareholder must assert more than personal economic injury resulting from a wrong to the corporation.  A shareholder must be injured directly and independently of the corporation."  *Shell Petroleum, N.V. v. Graves,* 709 F.2d 593, 595 (9th Cir. 1983) (internal citations omitted); *see also United States v. Stonehill*, 83 F.3d 1156, 1160 (9th Cir. 1996) ("Well-established principles of corporate law prevent a shareholder from bringing an individual direct cause of action for an injury done to the corporation or its property by a third party.").  Washington state law also recognizes the shareholder standing rule.  *See Sabey v. Howard Johnson & Co.*, 101 Wash. App. 575, 584 (2000) ("Ordinarily, a

ORDER ON DEFENDANT'S MOTION TO DISMISS ~ 12

shareholder cannot sue for wrongs done to a corporation, because the corporation is a separate entity.").

Here, Mr. Lerner is the managing member and sole shareholder of Rail Logistics.  ECF Nos. 1 at ¶ 3; 23 at 12.  Mr. Lawson was the president and chief executive officer of Rail Logistics (an employee).  ECF No. 1 at ¶ 3.  The gravamen of Plaintiffs' claims are that BNSF caused injury to Cold Train through low OTPs and cancelled the 72-hour service.  This alleged injury reduced the value of Rail Logistics' Cold Train.  Plaintiffs now seek to recover damages for losses that are merely incidental to the alleged harm inflicted upon Rail Logistics' business.

Nonetheless, Plaintiffs claim to have standing and assert the two exceptions to the shareholder standing rule.  ECF No. 23 at 10-12.  In general, plaintiffs are excepted from the shareholder standing rule if they can (1) allege an injury distinct from other shareholders or members of the corporation or (2) allege that there was a special duty, such as a contractual duty, between the plaintiff and the defendant. *See Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 640 (9th Cir. 1988).

Neither exception has been properly pleaded in this case.  First, Plaintiffs do not sufficiently allege a distinct injury.  *See Sparling*, 864 F.2d at 640.  A reduction in Cold Train's value would negatively impact any shareholder of Rail Logistics.  While Plaintiffs have arguably shown, at least on the pleadings, they suffered

1  personal economic loss as a result of BNSF's alleged conduct, this is insufficient

2  because their personal loss merely derives from their employment at and

3  ownership of Rail Logistics.  *See Shell Petroleum*, 709 F.2d at 595.

4      Second, Plaintiffs' Complaint does not allege a special relationship or duty

5  existed between them and BNSF.  *See Sparling*, 864 F.2d at 640.   However, in

6  Plaintiffs' Response to Defendant's Motion to Dismiss they allege, for the first

7  time, special duties existed between BNSF and Plaintiffs.  ECF No. 23 at 14.  The

8  purported duties were "to not misrepresent facts, interfere with [their] business

9  expectancies, or go back on its promise." *Id.*  Such alleged duties do not establish

10  a special or contractual relationship between Plaintiffs and BNSF and do not show

11  Plaintiffs had a relationship with BNSF independent of Rail Logistics'.

12      Plaintiffs also argue that as an officer of Rail Logistics, not a shareholder,

13  the shareholder standing rule does not bar Mr. Lawson's claims.  ECF No. 23 at

14  10-11.  However, even if true, Mr. Lawson still lacks standing as he is attempting

15  to assert claims that belong to Rail Logistics.  The purpose of the shareholder

16  standing rule is to avoid "multitudinous litigation" and to recognize corporations as

17  separate entities.  *See Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 846 (9th Cir.

18  1976).  Surely if an owner and shareholder cannot sue for injuries suffered by a

19  corporation neither can an employee, even if he is a corporate officer.  Moreover,

20  as discussed above, Mr. Lawson has not alleged he suffered a direct and

ORDER ON DEFENDANT'S MOTION TO DISMISS ~ 14

independent injury, and consequently, he lacks Art. III standing. *See Franchise Tax Bd.*, 493 U.S. at 335.

This Court finds Plaintiffs injuries, as currently plead, are merely incidental to the alleged injury caused to Rail Logistics by Defendant and therefore, Plaintiffs lack standing. Accordingly, Plaintiffs' action is dismissed with leave to amend within thirty (30) days of the date of this Order.

### 2. Contract between Rail Logistics and BNSF

Next Defendant argues that the contract between Rail Logistics and BNSF preclude Plaintiffs' claims. *See* ECF No. 10 at 11-13. Specifically, Defendant argues the terms of the contract show BNSF did not guarantee a 72-hour service from Quincy to Chicago and it excludes BNSF from liability due to changes in service. *See id.*

The Court will not consider these arguments at this stage of the litigation. The Court only considers the contract between Rail Logistics and BNSF in its determination whether to dismiss this action. *See supra* "Standard of Review" at 6-8. However, in its consideration of the contract, the Court recognizes, only for the purposes of this order, the existence of the contract and that it was signed by Mr. Lerner in a representative capacity on behalf of Rail Logistics. The Court declines to interpret the terms of the contract at this time. Therefore, Defendant's

ORDER ON DEFENDANT'S MOTION TO DISMISS ~ 15

argument that the terms of the contract between Rail Logistics and BNSF preclude Plaintiffs' claim does not support its motion to dismiss.

### 3. Failure to State a Claim

Plaintiffs' complaint raises three express claims against BNSF: (1) intentional interference with business expectancy; (2) promissory estoppel; and (3) fraud/negligent misrepresentation. *See* ECF No. 1 at ¶¶ 29-39. Defendant argues each claim must be dismissed as a matter of law for failure to state a claim. *See* ECF No. 10 at 13-20.

At oral argument Defendant claimed, pursuant to the contract between Rail Logistics and BNSF, the Court should apply Texas law when analyzing the merits of Plaintiffs' claims. The Court disagrees. This is not a contract cause of action. Plaintiffs' Complaint alleges certain torts occurred in Washington, thus Washington law applies. Accordingly, the Court will apply Washington law and evaluate each of Plaintiffs' claims in turn below.

### a. Claim for Intentional Interference with Business Expectancy

Plaintiffs' first cause of action alleges Defendant intentionally interfered with Plaintiffs' business expectancy in the sale of Cold Train to Federated. ECF No. 1 at ¶¶ 29–33. Plaintiffs' allege Defendant knew of this expectancy based on its meetings with Mr. Lawson and a representative from Federated. *Id.* at ¶ 30.

ORDER ON DEFENDANT'S MOTION TO DISMISS ~ 16

1    Plaintiffs allege Defendant intentionally interfered with this expectancy by

2    "preferring business from other customers over the Cold Train's business … [and]

3    by cancelling the 72-hour service." *Id.* at ¶ 31.  Plaintiffs further allege

4    Defendant's motive for this conduct "was purely greed" and to devote its resources

5    to ship oil and coal.  *Id.*

6         Under Washington state law, the elements of intentional interference with

7    business expectancy are (1) the existence of a valid contractual relationship or

8    business expectancy; (2) the defendant had knowledge of that relationship; (3) an

9    intentional interference inducing or causing a breach or termination of the

10   relationship or expectancy; (4) the defendant interfered for an improper purpose or

11   used improper means; and (5) resultant damages.  *See Commodore v. Univ. Mech.*

12   *Contractors, Inc.*, 120 Wash.2d 120, 137 (1992) (as amended).

13        Plaintiffs fail to allege sufficient facts to make a plausible claim under this

14   cause of action.  First, Cold Train is represented to be Rail Logistics' business, not

15   Plaintiffs' business.  Complaint, ECF No. 1 at ¶ 3.  Second, Plaintiffs do not allege

16   sufficient facts to show intentional interference or improper purpose on

17   Defendant's part.  Plaintiffs' alleged facts that (1) Defendant preferred costumers

18   other than Cold Train and (2) cancelled a service, do not allow the court to "draw

19   the reasonable inference" that Defendant is liable for intentionally interfering in

20   Rail Logistics' sale of Cold Train to Federated.  *See Iqbal*, 556 U.S. at 678.

ORDER ON DEFENDANT'S MOTION TO DISMISS ~ 17

Similarly, Plaintiffs' alleged fact that Defendant was motivated by "greed" is not sufficient to show Plaintiffs could prove improper purpose or motive.  Most businesses aim to increase profits, and thus, are "motivated by greed." Accordingly, Plaintiffs' claim for intentional interference with business expectancy is dismissed with leave to amend within thirty (30) days of the date of this Order.

### b.  Claim for Promissory Estoppel

Plaintiffs' second cause of action is for promissory estoppel.  ECF No. 1 at ¶¶ 34–36. Plaintiffs allege to have "had extensive discussions with BNSF regarding the 72-hour service from Quincy to Chicago [and] BNSF promised this service could support [Rail Logistics'] Cold Train business."  *Id.* at ¶ 34.  Plaintiffs claim to have detrimentally relied upon this promise by "incurring liability, by forgoing other opportunities, and by expending their time to build the Cold Train business."  *Id.* at ¶ 35.

There are five prerequisites for a recovery in promissory estoppel: (1) A promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise.  *Corbit v. J.I. Case Co.*, 70 Wash.2d 522, 539 (1967).

ORDER ON DEFENDANT'S MOTION TO DISMISS ~ 18

Here, as it is currently plead in the Complaint, it is not plausible Plaintiffs justifiably relied upon BNSF's alleged promise it would resolve OTP issues.  First, the OTP issues concerned Rail Logistics' operation of the Cold Train.  There are no independent promises alleged in the Complaint that concern the individual Plaintiffs.  Second, at the same time BNSF allegedly promised to address service issues, Plaintiffs allege the 72-hour OTP steadily fell from 81% in September 2014 down to 3% in April 2014.  ECF No. 1 at ¶¶ 14-15, 20.  Plaintiffs claim to have relied on Defendant's amorphous and inadequately plead promise despite this continual and drastic drop in OTP.  As currently plead, this Court finds such justifiable reliance not plausible given these nebulously alleged facts.  Accordingly, Plaintiffs' claim for promissory estoppel is dismissed with leave to amend within thirty (30) days of the date of this Order.

### c.  Claim for Fraud and Negligent Misrepresentation

Plaintiffs' third cause of action alleges fraud and negligent misrepresentation based on BNSF's allegedly false representation it was taking steps to improve its OTP.  ECF No. 1 at ¶¶ 37–39.  Defendant contends Plaintiffs' fraud and negligent misrepresentation claim fails to satisfy Rule 9(b)'s heightened pleading requirement.  ECF No. 10 at 18-20.  Defendant argues Plaintiffs allegations fail to provide the "who, what, when, where, and how" required to plead a claim for fraud.  *Id.* at 19.

ORDER ON DEFENDANT'S MOTION TO DISMISS ~ 19

1    The Court agrees.  Plaintiffs allege "BNSF represented to [Plaintiffs] it was

2    taking steps to improve its OTP … BNSF knew or should have known that these

3    statements were false … In the alternative, BNSF negligently obtained and

4    communicated this false information to [Plaintiffs]."  ECF No. 1 at ¶ 38.  These

5    allegations are not "specific enough to give [Defendant] notice" of its particular

6    misconduct so it can defend itself against this claim.  *See Vess*, 317 F.3d at 1106.

7    Plaintiffs do not state who at BNSF was making these alleged misrepresentations.

8    Plaintiffs do not provide sufficient information as to when and where these

9    statements were made.  Plaintiffs allege "BNSF reiterated these statements at the

10   March 4, 2014 meeting," but only generally state that the alleged

11   misrepresentations were first made "[t]hroughout the latter part of 2013 and well

12   into 2014" and "other times."  ECF No. 1 at ¶ 37.  Moreover, besides the March 4,

13   2014 meeting, Plaintiffs do not state how these misrepresentations were made.  For

14   instance, whether the statements were made in person, over the phone, or written in

15   electronic or letter correspondence.  The Court finds Plaintiffs have not pled its

16   claims with sufficient particularity to satisfy Rule 9(b).

17        Moreover, as currently plead in the Complaint and explained above,

18   Plaintiffs fail to show any independent, personal interest they have in the subject of

19   the allegedly fraudulent misrepresentations that Rail Logistics would not be the

20   rightful plaintiff to assert.

ORDER ON DEFENDANT'S MOTION TO DISMISS ~ 20

Accordingly, Plaintiffs' claims for fraud and negligent misrepresentation are dismissed with leave to amend within thirty (30) days of the date of this Order.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Defendant's Motion to Dismiss for Failure to State a Claim (ECF No. 10) is **GRANTED**.

2.  Plaintiffs' Complaint (ECF No. 1) is **DISMISSED WITH LEAVE TO AMEND** within **thirty (30) days** of the date of this Order.

The District Court Executive is directed to enter this Order, and provide copies to counsel.

**DATED** October 23, 2015.



THOMAS O. RICE
United States District Judge

ORDER ON DEFENDANT'S MOTION TO DISMISS ~ 21