UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STEVEN LAWSON, an individual; and MICHAEL S. LERNER, both as an individual and as Trustee of the MICHAEL LERNER REVOCABLE LIVING TRUST, a trust, COLD TRAIN, LLC, a Washington limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>BNSF RAILWAY COMPANY, a Delaware corporation,<br><br>Defendant. | NO: 2:15-CV-0094-TOR<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |

BEFORE THE COURT is Defendant BNSF Railway Company's motion to dismiss for failure to state a claim (ECF No. 37). The motion was heard with oral argument on April 13, 2016. Daniel J. Appel, Dale M. Foreman and R. Bruce Johnston appeared on behalf of Plaintiffs. Markus W. Louvier and Daniel T. Donovan appeared on behalf of Defendant. The Court has reviewed the briefing, files, and record therein; heard from counsel, and is fully informed.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 1

## PROCEDURAL HISTORY

On April 7, 2015, Plaintiffs Steven Lawson and Michael S. Lerner initiated this action against Defendant BNSF Railway Company ("BNSF"). ECF No. 1. Their complaint asserted the following causes of action: (1) intentional interference with business expectancy; (2) promissory estoppel; and (3) fraud/negligent misrepresentation. *Id.*

On October 23, 2015, this Court dismissed Plaintiffs' complaint after finding Plaintiffs lacked standing and their claims failed to state a claim upon which relief could be granted. ECF No. 31. The Court did, however, grant Plaintiffs leave to file an amended complaint. *Id.*

On November 20, 2015, Plaintiffs filed their First Amended Complaint. ECF No. 32. The amended complaint adds Cold Train, LLC and the Michael Lerner Revocable Living Trust (the "Lerner Trust") as plaintiffs, and alleges the following causes of action: (1) promissory and/or equitable estoppel claim by Lerner and Lawson, (2) intentional interference with business expectancy claim by Lerner, Lawson, and Cold Train, LLC (3) Fraud, Promissory Fraud, and/or Negligent Misrepresentation claim by Lerner and Lawson, (4) violation of the Washington Consumer Protection Act claim by Lerner, Lawson, and Cold Train, LLC and (5) Subrogation claims by Lerner. *Id.* at 35-40.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 2

In the instant motion, BNSF moves to dismiss, arguing Plaintiffs still lack standing and their claims again lack merit. ECF No. 37. Plaintiffs filed a response in which they opposed dismissal of their first four causes of action (ECF No. 47) and withdrew their fifth cause of action for subrogation (*id.* at 34).

**FACTS**

The following facts are drawn principally from Plaintiffs' First Amended Complaint and documents attached thereto, and are accepted as true for the purposes of the instant motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Rail Logistics, LC ("Rail Logistics") and Cold Train, LLC operated the "cold train" business,[1] an intermodal shipping service for fresh and frozen food items. ECF No. 32 at ¶ 3. Mr. Lawson was the president and chief executive officer of Rail Logistics and a manager of Cold Train, LLC. *Id.* at ¶ 3. Mr. Lerner is a trustee of the Lerner Trust, the owner and managing member of Rail Logistics, and the owner of Cold Train, LLC. *Id.* at ¶ 4.

---

[1] Throughout the First Amended Complaint, Plaintiffs use the term Cold Train to refer to the legal entity, Cold Train, LLC, and as a descriptive term for the transporting business. To avoid confusion, hereinafter, the Court will refer to the legal entity as Cold Train, LLC and the transporting business as cold train.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 3

1. **The Contracts**

In 2009, Mr. Lawson met with representatives from BNSF to discuss the possibility of shipping fresh produce from Quincy, Washington to points east by rail. *Id.* at ¶ 9. Following these discussions, in March 2009, BNSF and Rail Logistics entered into a shipping contract. *Id.* at ¶¶ 10; 16. The contract was signed by Mr. Lerner in a representative capacity as the Managing Member of Rail Logistics. ECF No. 16 at 2.

After signing the March 2009 Contract, the parties continued discussions concerning the terms of the BNSF/Rail Logistics business relationship. ECF No. 32 at ¶¶ 13-22. For instance, in May 2009, Plaintiffs allege BNSF "confirmed" that the service from Quincy to Chicago, Illinois would be 72 hours as part of its Z train network. *Id.* at ¶¶ 17, 19. Further, Plaintiffs allege that BNSF imposed certain conditions, including: (1) that Rail Logistics ship 95% of its traffic on BNSF lines, *id.* at ¶ 22, a requirement Plaintiffs argue effectively prohibited the cold train business from using other carriers, *id.* at ¶ 51, and (2) the use of 53' refrigerated intermodal containers to ship produce out of Quincy, an unconventional container size. *Id.* at ¶¶ 13,15.

Based on the second condition, in November 2009, Mr. Lerner personally paid approximately $55,000 for the construction of a 53' container prototype, and subsequently, caused 70 containers to be ordered. *Id.* at ¶¶ 30, 32. These

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 4

containers were purchased by a third-party and leased to Rail Logistics. *Id.* at ¶ 32. Mr. Lerner personally guaranteed the lease. *Id.* Thereafter, Mr. Lerner continued to personally guarantee the purchases and leases of such containers, and by September 2013 there were 400 containers in operation. *Id.* at ¶¶ 43; 44; 47; 50, 56. Most often the leases were 7.5 years of a non-terminable duration. *Id.* at 45. Notably, in December 2011, Mr. Lawson, in a representative capacity as President of Rail Logistics, signed a contract governing the use of private containers on BNSF's network. ECF No. 32-1, Ex. 10.

In early 2010, BNSF and Rail Logistics signed an amendment ("Quincy Agreement") to the March 2009 contract with specific terms relating to operations in Quincy. ECF No. 17. The Quincy Agreement was signed by Mr. Lerner in a representative capacity as the Managing Member of Rail Logistics. *Id.* It provided for an initial term until August 31, 2014, followed by an option for an extension for two additional years, if mutually agreed. *Id*. Plaintiffs allege the term to August 31, 2016 was known by the parties to be the "bare minimum required for a reasonable recovery of the capital expenditures" for the 53' containers. ECF No. 32 at ¶ 35.

2. **Cold Train Operations**

Sometime in early 2010, Cold Train, LLC was formed. *Id.* at ¶ 36. Plaintiffs allege Cold Train, LLC leased the 53' containers from Rail Logistics,

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 5

operated under the Quincy Agreement with BNSF's knowledge and consent, and began the cold train operation with its first shipment in April 2010. *Id.* at ¶¶ 36, 47. Cold Train, LLC operated cold train until late 2011 when the entity's operations were suspended due to unrelated litigation. *Id.* at ¶¶ 37-38. Thereafter, Rail Logistics operated cold train. *Id.*

Initially, demand for cold train's service grew and the business added approximately 200 loads per month for the last part of 2013 alone. *Id.* at ¶¶ 58, 60. Because of this success, Plaintiffs sought out a capital partner to provide funds to continue the expansion of the cold train business. *Id.* at ¶ 60. Plaintiffs also began discussions with BNSF to extend the Quincy Agreement for an additional five years. *Id.* at ¶ 61.

Starting in September of 2013, Plaintiffs allege that the 72-hour delivery on-time percentage ("OTP") from Quincy to Chicago began to steadily decline, falling to 81% in September, 54% in October, 44% in November, 35% in December, 28% in January 2014, and 4% in February 2014. *Id.* at ¶¶ 62; 65-67; 69. Plaintiffs allege they informed BNSF that these delays caused significant issues with clients and that eastbound shipments were down 50%. *Id.* at ¶¶ 63, 67-68. In response,

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 6

Plaintiffs allege BNSF repeatedly assured them that it was working to overcome operational challenges and restore service.[2] *Id.* at ¶¶ 65-68.

In January of 2014, Plaintiffs allege Mr. Lawson, "on behalf of himself and Mr. Lerner, and not on behalf of Rail Logistics," met with BNSF representatives to inform them they received an offer to sell Rail Logistics and its cold train business to Federated Railways, Inc. ("Federated"). *Id.* at ¶¶ 79, 86. Pursuant to the pending offer, Mr. Lawson informed BNSF he would continue to oversee operations as president of the purchased entity. *Id.* Plaintiffs claim BNSF responded "enthusiastically," encouraged Mr. Lawson and Mr. Lerner to move forward with the sale, and agreed to meet with Federated. *Id.* at ¶ 80.

Based on these representations and the "promises of improved service," Plaintiffs claim Mr. Lawson executed a Letter of Intent with Federated. *Id.* at ¶ 81. Plaintiffs allege the sale would provide a "significant payment" to Mr. Lerner and relieve him of liabilities, and additionally, that the sale was worth an estimated $21 million to Mr. Lawson. *Id.* at ¶¶ 84-85.

On March 4, 2014, Mr. Lawson, "on behalf of himself and Mr. Lerner," met with representatives from Federated and BNSF. *Id.* at ¶ 86. At the meeting,

---

[2] At least some of the service delays were due to extreme weather-related problems. *See* ECF No. 32-1, Ex. 11.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 7

Plaintiffs allege BNSF "promised continued and improved service to *Rail Logistics, or its successor*, and made these representations and promises directly to Mr. Lawson and [Federated's representative]." *Id.* at ¶¶ 86-87 (emphasis added). Plaintiffs further allege BNSF "confirmed that it would offer a new five-year contract for Quincy" and "promised to do whatever was necessary to ensure a smooth transition from Rail Logistics to Federated Cold Train." *Id.* at ¶ 88. Plaintiffs claim that, based on BNSF's representations and promises at this meeting, Federated infused capital of $1.25 million into Rail Logistics. *Id.* at ¶¶ 89-90. Mr. Lerner personally guaranteed these funds. *Id.* at ¶ 90.

However, on April 24, 2014, BNSF informed Mr. Lawson and Mr. Lerner that it cancelled the 72-hour Z train service, effective the following day, and substituted it with a new 125-hour Q train service. *Id.* at ¶ 92. Plaintiffs allege BSNF planned to make this change prior to the March 4, 2014 meeting with Federated, and prepared other major customers for this change but "concealed its plan" from Plaintiffs and Federated. *Id.* at ¶ 95.

On April 28, 2014, Mr. Lerner and Mr. Lawson met with BNSF representatives to request restoration of the 72-hour Z train service. *Id.* at ¶ 101. However, BNSF declined to restore the service. *Id.* at ¶ 102. Plaintiffs claim that at the time of the service termination, BNSF was aware that the 72-hour service and a high OTP were "vital to the Cold Train's economic viability" and that Mr.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 8

Lerner had not yet recovered his capital expenditures. *Id.* at ¶¶ 98-99. Plaintiffs assert that BNSF's termination of the 72-hour service "effectively destroyed" the cold train business. *Id.* at ¶ 46.

Additionally, Plaintiffs allege that "[a]s a direct result of the service termination," Federated terminated its approximately $31.7 million offer to purchase Rail Logistics and submitted a new, reduced offer of $2 million. *Id.* at ¶ 106. The new offer was contingent upon a new five-year contract with BNSF absent the requirement that 95% of the containers be carried on BNSF lines. *Id.* at ¶ 107. Plaintiffs allege BNSF initially agreed to waive the 95% requirement but ultimately refused to exclude the term from the new contract. *Id.* at ¶¶ 107-08. Thereafter, Federated withdrew its $2 million offer. *Id.* at ¶ 109.

The cold train ceased operations on August 6, 2014. *Id.* Plaintiffs claim that due to BNSF's actions Mr. Lerner lost the value of his cold train business and now faces significant liabilities.[3] *Id.* at ¶ 111. Similarly, Mr. Lawson claims he lost the

---

[3] On September 8, 2014, Plaintiffs allege Mr. Lawson contacted Marc Allen of BNSF regarding mitigation of losses about the potential redeployment of the 53' containers, and Mr. Allen responded "Sell them and buy trailers," indicating BNSF had changed its requirements from the 53' containers back to trailers. ECF No. 32 at ¶ 46.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 9

value of Federated's offer to him and claims to have declined "lucrative job opportunities" that he would have taken if not for BNSF's promises and representations. *Id.* at ¶ 112.

## STANDARD OF REVIEW

This Court has previously set forth in detail the standards by which a complaint is evaluated on a motion to dismiss for failure to state a claim. *See* ECF No. 31 at 8-10. Those same standards apply to the instant motion. In brief, a motion to dismiss for failure to state a claim tests the legal sufficiency of the plaintiff's claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citations omitted). Even when a complaint fails to state a claim for relief, however, the Ninth Circuit has repeatedly instructed district courts to "grant leave to amend even if no request to amend the pleading was made, unless . . . the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quotations omitted). The court considers five factors in assessing the propriety of leave to amend—bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *United States v. Corinthian Colleges,* 655 F.3d 984, 995 (9th Cir. 2011).

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 10

**DISCUSSION**

**1. Standing**

As the Court previously set forth, *see* ECF No. 31 at 12-13, standing consists of two related components: the constitutional requirements of Article III and nonconstitutional prudential considerations. *See Franchise Tax Bd. Of California v. Alcan Aluminium Ltd.*, 493 U.S. 331, 335 (1990). Art. III requires a plaintiff to allege: (1) "that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant;" (2) "that the injury fairly can be traced to the challenged action;" and (3) that the injury "is likely to be redressed by a favorable decision." *Id.* (internal quotations and citations omitted). Among the prudential considerations related to standing is the Ninth Circuit's "shareholder standing rule." *See id.* at 336 (rule recognized and left intact). That rule provides that "a shareholder must assert more than personal economic injury resulting from a wrong to the corporation. A shareholder must be injured directly and independently of the corporation." *Shell Petroleum, N.V. v. Graves,* 709 F.2d 593, 595 (9th Cir. 1983) (internal citations omitted); *see also United States v. Stonehill,* 83 F.3d 1156, 1160 (9th Cir. 1996) ("Well-established principles of corporate law prevent a shareholder from bringing an individual direct cause of action for an injury done to the corporation or its property by a third party."). Washington state law also recognizes the shareholder standing rule. *See Sabey v.*

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 11

*Howard Johnson & Co.,* 101 Wash. App. 575, 584 (2000) ("Ordinarily, a shareholder cannot sue for wrongs done to a corporation, because the corporation is a separate entity[.]").

In general, plaintiffs are excepted from the shareholder standing rule if they can (1) allege an injury distinct from other shareholders or members of the corporation or (2) allege that there was a special duty, such as a contractual duty, between the plaintiff and the defendant. *See Sparling v. Hoffman Constr. Co. Inc.*, 864 F.2d 635, 640-41 (9th Cir. 1988).

The Court previously ruled that Mr. Lerner and Mr. Lawson lacked standing to assert claims that belong to Rail Logistics. *See* ECF No. 31 at 13-15. The Court explained that "[t]he gravamen of Plaintiffs' claims are that BNSF caused injury to cold train through low OTPS and cancelled the 72-hour service. This alleged injury reduced the value of Rail Logistics' cold train. Plaintiffs now seek to recover damages for losses that are merely incidental to the alleged harm inflicted upon Rail Logistics' business." *Id.* at 13. Consequently, the Court ruled that Mr. Lerner and Mr. Lawson, as the sole shareholder and an employee of Rail Logistics respectively, were barred by the shareholder standing rule. The Court further ruled that because Plaintiffs did not sufficiently allege a distinct injury or that a special relationship or duty existed between them and BNSF, neither of the two exceptions to the shareholder standing rule applied. *Id.* at 13-14.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 12

Plaintiffs' First Amended Complaint does not remedy the deficiencies identified in the Court's prior order. The alleged facts demonstrate that BNSF was in a contractual relationship with Rail Logistics since March 2009, and that at all relevant times it was Rail Logistics operating the cold train business pursuant to its contracts with BNSF. Plaintiffs' arguments that the contracts were "nominally between BNSF and Rail Logistics" and Rail Logistics was a mere "placeholder," *see* ECF No. 32 at ¶¶ 10, 25, 42, are unpersuasive.[4] *See Sears, Roebuck & Co. v. Nicholas*, 2 Wash.2d 128, 132-33 (1939) (holding that, generally, a formal written contract embraces all agreements between the parties in connection with the subject-matter of the contract, and all parol testimony of prior or contemporaneous conversations tending to substitute a new contract is incompetent).

Importantly, despite the new allegations, Plaintiffs are still pursuing claims that properly belong to Rail Logistics, because the gravamen of Plaintiffs' claims remain that BNSF caused injury to Rail Logistics' cold train business through low OTPs and a discontinued 72-hour service. All of Plaintiffs' alleged injuries and

---

[4] Likewise, Plaintiffs' argument that their "prior business relationship" with BNSF establishes individual standing, *see* ECF No. 47 at 2, is without merit, because all their alleged prior relationships and misconduct occurred after Rail Logistics signed the contract in March 2009.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 13

damages flow from this injury and from the BNSF/Rail Logistics relationship. Decisively, in the absence of the alleged injury to Rail Logistics, Plaintiffs would not have suffered harm.

Nonetheless, Plaintiffs claim to have standing and argue the First Amended Complaint includes new factual allegations that demonstrate the exceptions to the shareholder standing rule apply. ECF No. 47 at 13-20. This Court disagrees, as explained below.

a. **Mr. Lawson**

With respect to Mr. Lawson, the First Amended Complaint includes the new allegation that he was a party, in his personal capacity, to the letter of intent with Federated. *See* ECF No. 32 at ¶ 81. Plaintiffs argue this demonstrates Mr. Lawson suffered a distinct injury because he lost millions and an offer of employment when Federated withdrew its offer due to the cancelled 72-hour service. *See* ECF No. 47 at 15. In support, Plaintiffs cite to a Supreme Court of Delaware case holding that a party to a commercial contract may sue to enforce its contractual rights directly, without proceeding by way of a derivative action. *Id.* (citing *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175, 179-80 (Del. 2015) (where plaintiff was in a direct contractual relationship with the defendant)).

The Court finds Plaintiffs still fail to demonstrate how Mr. Lawson was injured independent of Rail Logistics. When Federated withdrew its offer Mr.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 14

Lawson suffered personal economic loss, but this loss derives from Mr. Lawson's employment at Rail Logistics and stems from the alleged injury incurred by Rail Logistics. Thus, as the Court explained in its prior order, *see* ECF No. 31 at 13-14, this loss is insufficient to establish an independent, distinct injury. *See Shell Petroleum*, 709 F.2d at 595; *see also Stein v. United Artists Corp.*, 691 F.2d 885, 896 (9th Cir. 1982) (collecting cases denying corporate officers and employees standing).

Moreover, Plaintiffs still fail to allege facts which demonstrate there was a contractual relationship or special duty between BNSF and Mr. Lawson. Whether or not Mr. Lawson has a contractual relationship with Federated, by way of the letter of intent, and can enforce his rights pursuant to such a contract, is not at issue. Significantly, a contract between Mr. Lawson and Federated does not provide him standing to bring an action against BNSF to assert claims that belong to Rail Logistics. The Court concludes Mr. Lawson lacks standing.

### b. **Mr. Lerner**

With respect to Mr. Lerner, Plaintiffs argue the First Amended Complaint contains new allegations demonstrating Mr. Lerner was "induced" to incur individual liability by BNSF's promises and misrepresentations. *See* ECF No. 47 at 7 (citing ECF No. 32 at ¶¶ 79-90); 15-16. Plaintiffs argue this demonstrates Mr. Lerner suffered a distinct injury. *Id.* at 15-16. In support, Plaintiffs reference the

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 15

March 4, 2014 meeting, where Mr. Lawson met with representatives of BNSF and Federated to discuss the possible acquisition of Rail Logistics by Federated, and argue "If BNSF had simply told the truth at the [] meeting, Federated would not have put up the $1.25 million and Mr. Lerner would not have guaranteed it." *Id.* at 16.

Plaintiffs further argue the First Amended Complaint demonstrates BNSF owed Mr. Lerner special duties, because BNSF "required the special design and purchase of the special [53'] containers." ECF No. 47 at 18. Specifically, Plaintiffs argue BNSF owed Mr. Lerner a "duty to be candid, a duty to act in good faith, and a further duty to allow a reasonable time of operation for recovery of the huge, single use, capital expenditures required by it." ECF No. 47 at 19.

First, the First Amended Complaint fails to plead that any alleged misrepresentations or promises were made to Mr. Lerner in his personal capacity. For instance, at the March 4, 2014 meeting, the alleged promises were made to Rail Logistics and Federated, not any of the named Plaintiffs. *See* ECF No. 32 at ¶ 88 ("[O]n March 4, 2014, BNSF promised continued and improved service to Rail Logistics, or its successor … BNSF further promised to do whatever was necessary to ensure a smooth transition from Rail Logistics to Federated Cold Train."); *id.* ("BNSF confirmed that it would offer a new five-year contract for Quincy that would provide incentives for investment in new refrigerated

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 16

containers."). Likewise, other alleged promises and misrepresentations included in the amended complaint were made to agents of Rail Logistics, not Plaintiffs in their personal capacity, as shown by the emails attached to the amended complaint. *See, e.g.,* ECF No. 32-1, Ex. 1 (where BNSF emails Mr. Lawson, as Rail Logistics then Director of Business Development, and allegedly promises 72 hour rail service); *id.*, Exs. 11; 12 (where BNSF emails April Withers, as Rail Logistics Vice President of Operations, and Mr. Lawson, as Rail Logistics President, and allegedly misrepresents that OTPs would improve). Consequently, the First Amended Complaint fails to show any independent interest Mr. Lerner may have in the alleged promises.

Moreover, Mr. Lerner's status as a personal guarantor for Rail Logistics' liabilities fails to establish a distinct injury. *See Sparling*, 864 F.2d at 641 ("Any harm to the [plaintiffs] due to their status as guarantors of the bonds given by the corporation is also derivative of the harm to the corporation."); *see also Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 439-440 (9th Cir. 1979) (denying standing in circumstances where sole stockholder of a corporation personally guaranteed certain obligations of corporation to third parties). The cases cited by Plaintiffs do not hold otherwise.

Second, as for the purported duties BNSF owes Mr. Lerner because of his investment in the 53' containers, the First Amended Complaint demonstrates that

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 17

Rail Logistics leased the 53' containers, not Mr. Lerner.  *See* ECF No. 32 at ¶¶ 32, 43-44.  Thus, any purported special duty attached to the procurement of these containers would be owed to Rail Logistics.  While Mr. Lerner personally guaranteed these leases, as discussed, his status as guarantor does not confer him standing.  *See Sparling*, 864 F.2d at 641.

Because the First Amended Complaint fails to demonstrate Mr. Lerner suffered a distinct injury or had a relationship with BNSF independent of Rail Logistics, the Court concludes that Mr. Lerner lacks standing to assert claims that properly belong to Rail Logistics.

### c. **The Lerner Trust and Cold Train, LLC**

With respect to the new plaintiffs included in the First Amended Complaint, the Lerner Trust and Cold Train, LLC, the Court finds neither party allegedly suffered a direct injury as a result of BNSF's alleged misconduct, and consequently, both parties lack Art. III standing.  *See Franchise Tax Bd.*, 493 U.S. at 335.  Significantly, the First Amended Complaint is devoid of any specific facts concerning the Lerner Trust; beyond listing it as a party, the amended complaint does not mention or discuss this entity.  Therefore, the First Amended Complaint fails to allege a direct injury against the Lerner Trust, and accordingly, the Lerner Trust lacks Art. III standing to assert claims against BNSF.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 18

As for Cold Train, LLC, the First Amended Complaint alleges facts purporting it was in a contractual relationship with Rail Logistics, not BNSF, *see* ECF No. 32 at ¶ 36, and that it suspended its operations in 2011, *see id.* at ¶¶ 37-38, well before BNSF's alleged misconduct concerning OTP issues began to occur in 2013 and the cancelled 72-hour service in 2014. Thus, like the Lerner Trust above, the amended complaint fails to allege a direct injury against Cold Train, LLC, and accordingly, Cold Train, LLC lacks Art. III standing to assert claims against BNSF.

In summation, because Mr. Lerner and Mr. Lawson lack standing pursuant to the shareholder standing rule, and Lerner Trust and Cold Train, LLC lack Art. III standing, this Court dismisses Plaintiffs' First Amended Complaint with prejudice in its entirety.

Plaintiffs have not sought leave to amend. The standard for granting leave to amend, however, is generous. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). The court considers five factors in assessing the propriety of leave to amend—bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 19

This Court finds that granting further leave to amend the First Amended Complaint would be nothing less than futile. *See Corinthian Colleges,* 655 F.3d at 995. Plaintiffs have had two full and fair opportunities to plead their case and nothing indicates that additional time or any restructuring of the facts would change the outcome.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss for Failure to State a Claim (ECF No. 37) is **GRANTED**.

2. Plaintiffs' First Amended Complaint (ECF No. 32) is **DISMISSED with prejudice.**

The District Court Executive is directed to enter this Order, enter Judgment for Defendant, provide copies to counsel, and **CLOSE** this case.

**DATED** May 16, 2016.



THOMAS O. RICE
Chief United States District Judge